UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| VINCENT FREEMAN II,<br><br>    Plaintiff<br><br>v.<br><br>C.C.D.C., et al.,<br><br>    Defendants | Case No.: 2:23-cv-01838-APG-EJY<br><br>**Order Granting Defendants' Motions for Summary Judgment and to Seal**<br><br>[ECF Nos. 20, 23] |

  Vincent Freeman II sues Sergeant Daniel Madrid and Officer Brian Small for events that took place while Freeman was in pretrial detention at the Clark County Detention Center (CCDC), where Madrid and Small worked. Freeman alleges that Small and Madrid used excessive force against him after breaking up a fight between Freeman and another detainee, and that they did so in retaliation for Freeman's grievances and litigation related to his treatment at CCDC. After screening, Freeman's claims for Fourteenth Amendment excessive force and First Amendment retaliation remain pending. ECF No. 7 at 9.

  Small and Madrid move for summary judgment, arguing that their use of force was objectively reasonable to restore order in the detention center after Freeman and the other detainee started fighting. They contend that Freeman did not comply with Small's commands to lie on the ground, Freeman tried to pull away from Small while being escorted out of the module, and Freeman refused to cooperate with a post-incident strip search. Small and Madrid argue that no genuine dispute remains because video footage shows the use of force was reasonable and Freeman's lack of response to their requests for admissions (RFAs) makes them admitted. They also argue Freeman did not exhaust his administrative remedies for his retaliation claim and there is no evidence that any use of force was in retaliation for Freeman's prior grievances or lawsuits.

Finally, the defendants assert they are entitled to qualified immunity.  The defendants also move to seal one of the video exhibits because it shows Freeman being strip searched.

Freeman responds that he attempted to exhaust, including by asking for copies of a particular grievance number, but was thwarted because "grievance[s] are immediately closed out" and the defendants alter documents. ECF No. 24 at 2.  Freeman contends that genuine disputes remain regarding whether the force was reasonable because he was restrained in handcuffs when Small took him to the ground, so he posed no threat to the defendants or anyone else.  He contends that his lack of response to the defendants' RFAs "was solely due to the [Nevada Department of Corrections] representatives['] neglect," as he has previously settled with High Desert State Prison (HDSP) for losing his personal and legal property. *Id.* at 3.  He contends that his retaliation claim is supported by the defendants' own exhibits, which document that during the incident, Freeman stated that he litigates against CCDC workers, so the officers were aware of his protected activity.  He contends that is why he was taken to the psychiatric ward and strip searched.

The parties are familiar with the facts, so I repeat them here only as necessary to resolve the summary judgment motion.  The defendants' RFAs are admitted because Freeman did not timely respond, has not moved to withdraw or amend the admissions, and has not provided an adequate basis to withdraw or amend.  I grant the defendants' motion on the excessive force claim because the force used was reasonable under the circumstances.  I grant the defendants' motion on the retaliation claim because Freeman did not exhaust administrative remedies.  Finally, I grant the defendants' unopposed motion to seal to protect Freeman's privacy.[1]

---

[1] Only one of the videos shows the strip search, but both videos are on the same thumb drive. Accordingly, I seal the thumb drive provided and unseal a separate thumb drive with only the surveillance footage that does not show the strip search.

2

## I. ANALYSIS

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

### A. The RFAs are admitted because Freeman did not timely respond, has not moved to withdraw or amend the admissions, and has not provided an adequate basis to withdraw or amend.

Under Federal Rule of Civil Procedure 36, matters addressed in RFAs are admitted and "conclusively established" unless the responding party serves an answer or objection within 30 days or unless otherwise stipulated by the parties or ordered by the court. Fed. R. Civ. P. 36(a)(3), (b). In November 2024, Small and Madrid sent RFAs to Freeman. ECF Nos. 20-17; 20-18. Freeman does not dispute that he did not respond within 30 days. Accordingly, Rule 36 dictates that the requests be admitted.

Under Rule 36(b), I may permit a party to withdraw or amend a Rule 36 admission "if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." The first prong of Rule 36(b) asks whether "upholding the admissions would practically eliminate any presentation of the merits of the case." *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995). The party seeking to withdraw its admissions bears the burden of satisfying the first prong of the test. *See McNamara v. Hallinan*, No. 2:17-cv-02966-GMN-NJK, 2019 WL 6122003, at *3 (D. Nev. Oct. 28, 2019).

The second prong of the Rule 36(b) test regarding prejudice "relates to the difficulty a party may face in proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously deemed admitted." *Hadley*, 45 F.3d at 1348 (quotation omitted). The party obtaining the admissions now needing to prove its case on the merits is insufficient to show prejudice. *Id.* Reliance on a deemed admission in preparing a summary judgment motion and lack of discovery, without more, do not constitute prejudice. *Conlon v. United States*, 474 F.3d 616, 623-24 (9th Cir. 2007). Prejudice is more likely to exist when the motion for withdrawal is made in the middle of trial. *See 999 v. C.I.T. Corp.*, 776 F.2d 866, 869 (9th Cir. 1985). The party who obtained the admission bears the burden of proving prejudice. *Hadley*, 45 F.3d at 1348.

I must consider both the merits and prejudice prongs, but even if the party seeking to withdraw admissions prevails on both prongs, permitting the withdrawal of admissions is discretionary. *Conlon*, 474 F.3d at 624-25. In exercising this discretion, I may consider factors such as "whether the [party seeking to withdraw admissions] can show good cause for the delay and whether [that party] appears to have a strong case on the merits." *Id.* In weighing these

4

factors, I consider the goals of "truth-seeking in litigation and efficiency in dispensing justice." *Id.* at 622 (citing Fed. R. Civ. P. 36(b) advisory committee note).

Freeman has not actually moved to withdraw his admissions, so he has not met his burden to show that upholding the admissions would practically eliminate any presentation of the merits of the case. A pro se litigant is not excused from the requirements to respond to RFAs and to move to withdraw those admissions if he does not timely respond. *See Gee v. Lombardo*, No. 2:17-cv-02710-JAD-BNW, 2020 WL 5653985, at *3 (D. Nev. Sept. 23, 2020). But it is obvious in this case that allowing the admissions to stand eliminates the need for presenting evidence on the merits. For example, Freeman was asked to admit that he failed to exhaust his administrative remedies, that Small and Madrid did not use excessive force, that Freeman was not injured when Small took him to the ground, and that Small did not retaliate. ECF Nos. 20-17 at 7-8; 20-18 at 8.

Even if I excused Freeman's failure to file a formal motion to withdraw the admissions and even if the defendants have not shown sufficient prejudice, I will not permit Freeman to withdraw his admissions under the discretionary factors. Freeman has not shown good cause for the delay. He states in conclusory and vague fashion that he has had difficulties with HDSP losing his legal materials. But Freeman does not deny that he received the RFAs. And he does not specifically state that the reason he did not respond was due to something HDSP did or failed to do; nor does he identify HDSP's specific acts or omissions that caused his default. He did not move to withdraw the admissions, and he did not attach proposed responses to the RFAs to his response to the motion for summary judgment. Additionally, in light of the surveillance video and other evidence, Freeman does not have a strong case on the merits. The RFAs thus stand as admitted.

**B. Freeman's excessive force claim fails because the evidence, admissions, and video footage show no genuine dispute remains that the force used was objectively reasonable.**

To establish liability under 42 U.S.C. § 1983, a plaintiff must show the deprivation of a right secured by the Constitution and laws of the United States and that the deprivation was committed by a person acting under color of state law. *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003). The defendants do not contest that they acted under color of state law. Thus, the dispute centers on whether they violated Freeman's Fourteenth and First Amendment rights.

The Fourteenth Amendment's due process clause "protects pretrial detainees from the use of excessive force that amounts to punishment." *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1197 (9th Cir. 2002), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016)). "To succeed on an excessive force claim, a pretrial detainee like [Freeman] must show that 'the force purposely or knowingly used against him was objectively unreasonable.'" *Bell v. Williams*, 108 F.4th 809, 819 (9th Cir. 2024) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015)). Objective reasonableness turns on the "facts and circumstances of each particular case." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Those facts and circumstances are viewed "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight," because "[o]fficers facing disturbances are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Kingsley*, 576 U.S. at 397, 399 (quotation omitted). In determining objective reasonableness, I consider factors such as "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* at 397. I "must also account for the legitimate

6

interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." *Id.* (simplified).

### *1. Small used reasonable force in taking Freeman to the ground.*

This case arises from an incident that began when Freeman got in a physical fight with another detainee. Ex. H at 0:00:07.[2] The video shows Freeman threw the first punch. *Id.* The fight lasted about 20 seconds before Small and another officer arrived. Ex. H at 0:00:07-27. Small ordered both detainees to stop fighting, which they did only after Small pulled out an electronic control device and told the detainees he would use it if they did not stop. *Id.*; ECF Nos. 20-9 at 2; 20-12 at 11. After the fight was broken up, Freeman was visibly bleeding from his mouth or lip. ECF No. 20-12 at 11, 20; *see also* ECF No. 20-9 at 2. The fight took place in an area where there were many other detainees who were complying with officer commands to lie on the ground but who were not restrained and outnumbered Small and the other officer. Ex. H at 0:00:27.

Small ordered Freeman to the ground, and Freeman sat down. ECF No. 20-9 at 2; Ex. H at 0:00:27-37. Small twice ordered Freeman to lay on the ground, but Freeman disobeyed these commands and instead remained seated. ECF Nos. 20-9 at 2; 20-12 at 11; Ex. H at 0:00:33-37. Small turned Freeman onto his stomach and started to handcuff him. ECF No. 20-9 at 2; Ex. H at 0:00:37-43. Other officers arrived, but the unrestrained detainees still outnumbered the officers. Ex. H at 0:00:38-01:10. After being handcuffed by Small and another officer, Freeman was not

---

[2] I cite to the manually filed surveillance video at ECF No. 20-8 as Ex. H at the approximate time stamp on the video clip.

7

resisting, so the officers brought Freeman to his feet and began walking with him out of the room. ECF Nos. 20-9 at 2; 20-17 at 7; Ex. H at 0:01:12. Small was holding the back of Freeman's shirt. Ex. H at 0:01:15. According to Small, once Freeman was on his feet, he "started yelling gang related slang." ECF No. 20-9 at 2. Small told him to be quiet. *Id.* According to Small and another officer, Freeman started to pull away while yelling, "I'm already going to the fucking hole! What are you gonna do bitch?" *Id.*; *see* ECF No. 20-10 at 8.

The surveillance video is not entirely clear on this point because of the camera angle and Small's and Freeman's body positions. What is clear is that Small swung Freeman to the ground. Ex. H at 0:01:19-22. At that point, more officers arrived and began to assist Small with Freeman while other officers focused on the other detainees. *Id.* at 0:01:19-30. Through his failure to respond to the RFAs, Freeman admitted that he was "not injured by Officer Small when he returned [Freeman] to the prone position," and that Small did not use excessive force. ECF No. 20-17 at 7-8.

No genuine dispute remains that Small did not use excessive force. Small was confronted with a serious security and safety issue because two detainees had just gotten into a fistfight. He was outnumbered and surrounded by other detainees who were complying with commands to lie on the ground, but who could have gotten up at any time because they were not restrained. Freeman, who had just been in the fight, was noncompliant because he did not obey Small's commands to lie on the ground. And he physically resisted by pulling away from Small after he got to his feet.

Through his default on the RFAs, Freeman admitted that he attempted to pull away from Small's grip on his shirt. ECF No. 20-17 at 7. In his opposition to the defendants' summary judgment motion, Freeman does not specifically deny that he pulled away. Instead, he states that

8

because he was handcuffed, he was not a threat to the defendants or anyone else at that time. ECF No. 24 at 3. His attached grievance likewise does not dispute that he pulled away and instead echoes his position that it was excessive to take him to the ground while he was handcuffed. *Id.* at 10. The closest Freeman comes to denying that he pulled away is in his complaint, where he states that "Small without cause rear shoulder slammed me while I was restrain[ed] not [posing] a threat to anyone." ECF No. 8 at 3. Although Freeman states in his complaint that Small's takedown was "without cause" because he was handcuffed, he never denies that he pulled away from Small and, through his admissions, he admitted that he did. The video does not create a genuine dispute whether Freeman pulled away.

Small thus used reasonable force to return Freeman to the ground to gain control over him. The lack of significant injury to Freeman from this takedown confirms the force used was reasonable. *See* ECF Nos. 20-16 at 2, 4, 7 (Freeman's medical record showing complaints of low back pain, "generalized body pain, superficial abrasions at both wrist[s and] lower lip," "very minimal swelling," Tylenol and wrist x-rays ordered,[3] x-rays unremarkable with no fracture or dislocation); 20-17 at 6 (admitting the bleeding from his lip or mouth came from the fight with the other detainee).

Further, Small is entitled to qualified immunity because Freeman has not met his burden to point to clearly established law that would have notified Small that he would violate Freeman's constitutional rights under these circumstances. *See O'Doan v. Sanford*, 991 F.3d 1027, 1036-37 (9th Cir. 2021) ("In evaluating qualified immunity . . ., the Supreme Court has reminded lower courts that use of excessive force is an area of the law in which the result

---

[3] The wrist x-rays appear to be related to Freeman's complaints about the strip search, not Small's takedown. Additionally, Freeman had just been in a fistfight with another detainee.

depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." (simplified)); *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002) ("The plaintiff bears the burden of showing that the right at issue was clearly established under this second prong."). I therefore grant summary judgment in Small's favor.

### 2. Madrid used reasonable force in ordering a spit mask placed on Freeman.

When Madrid entered the area where the fight occurred, Freeman's mouth was bloody, and he was loudly and repeatedly yelling despite officers ordering him to stop. ECF No. 20-11 (Ex. K, Madrid's body worn camera (BWC) footage) at 0:00:40-01:14.[4] It was objectively reasonable for Madrid to request a spit mask placed over Freeman's face so that Freeman's emphatic yelling did not get blood and spit on the officers and other detainees. *Id.* at 0:00:44 (blood visible on the floor), 0:00:54 (Madrid stating he was ordering a spit mask because Freeman was spitting blood); ECF No. 20-12 at 7 (Madrid's use of force report stating that he "asked Freeman to stop yelling due to the blood spraying on the floor, which could have potentially landed on other inmates and Officers," but Freeman would not comply, so he instructed another officer to use a spit mask).

Freeman does not identify any harm he suffered from having the spit mask placed on him, nor does he suggest that it was done in an unnecessarily forceful manner. Madrid's BWC footage shows the mask was not forcefully placed on Freeman (although there were officers holding Freeman down both before and after the mask was placed on him). Madrid BWC at 0:01:10.

---

[4] I cite to Madrid's body worn camera footage as Madrid BWC at the approximate time stamp on the video file, not the time shown in the video itself.

No reasonable jury could find the placement of the spit mask was objectively unreasonable. *Cf. Allen v. Rivera*, 626 F. App'x 710, 712 (9th Cir. 2015) (holding no reasonable jury could find excessive force under the Eighth Amendment where the plaintiff's lip was bleeding and his nose was running, so officers placed a spit mask on him "to protect themselves from purposeful or inadvertent transmission of bodily fluids," and there was no evidence the spit mask "affected [the plaintiff's] ability to function, caused him pain, or had any effect on his health once the mask was removed"). Further, Freeman has not identified any clearly established law that would have put Madrid on notice that ordering the spit mask under these circumstances would violate Freeman's constitutional rights, so Madrid is entitled to qualified immunity. *See O'Doan*, 991 F.3d at 1036-37; *Sorrels*, 290 F.3d at 969. I therefore grant Madrid summary judgment to the extent the excessive force claim is based on placement of a spit mask.

> *3. Madrid used reasonable force in ordering other officers to move Freeman to a separate cell and strip search him.*

After the officers got Freeman to his feet and moved him into a hallway outside the area where the other detainees were located,[5] Freeman continued yelling and ignored officers' commands to stop. Madrid BWC at 0:01:10-02:35. Madrid asked Freeman if he wanted medical assistance, and Freeman indicated he did, but Madrid concluded that medical could not assess Freeman in his agitated state. *Id.* at 0:02:16-03:25. Madrid asked Freeman if he was going to cooperate with a strip search and Freeman responded by repeatedly shouting "Eighth Amendment!" *Id.* at 0:02:44. Freeman screamed that his wrists were being twisted and to look at

---

[5] As discussed with respect to Small, the other detainees were complying with commands to lie on the ground while Freeman was escorted from the area but were otherwise not secured. *See* Madrid BWC at 0:00:25.

11

his left wrist, but at the time he made this comment, no officer was touching his left wrist or the handcuff on his left wrist. *Id.* at 0:03:12.

Several officers (but not Small)[6] then walked Freeman down a hall to an elevator. *Id.* at 0:03:40. Freeman cooperated by walking with the officers, but he continuously shouted the entire way. *Id.* at 0:03:40-04:15. Madrid again asked Freeman if he was going to cooperate with a strip search. *Id.* at 0:04:15. Freeman continued talking loudly about excessive force. *Id.* at 0:04:17-04:29. Freeman did eventually state, "I'm not refusing nothing." *Id.* at 0:04:30. However, he continued shouting as they walked out of the elevator and down the hall until he was just outside an isolation cell.[7] *Id.* at 0:04:30-05:10. Madrid again asked Freeman if he was going to cooperate. *Id.* at 0:05:13. Freeman responded, "Man, what you talking about, Madrid? Ya'll just slammed me." *Id.* at 0:05:14. Freeman continued shouting as several officers led him into the room. *Id.* at 0:05:14-05:38.

At that point, two officers maneuvered Freeman facedown onto the room's bed/bench while another officer straightened his legs. *Id.* at 0:05:38-05:42. Freeman began to shout about what the officers were doing to his wrist, and an officer (not Madrid) stated they were not twisting it. *Id.* at 0:05:48. It is unclear from the video what was happening because officers' bodies block the view, but Madrid clearly was not touching Freeman at this point, nor did he order anyone to twist Freeman's wrists. Madrid told Freeman that he was going to remove the handcuffs so they could perform a strip search. *Id.* at 0:05:49. But as Freeman continued to yell that the force was excessive, Madrid instead ordered the officers to cut off Freeman's clothes. *Id.*

---

[6] *See also* ECF No. 20-17 at 8 (Freeman admitting that "Small was not part of the group of officers that escorted [Freeman] to 2C").

[7] *See also* ECF Nos. 20-17 at 8 (Freeman admitting that he was "escorted to South Tower Isolation Module ('2C')"); 20-5 at 2 (Freeman's housing history showing he was moved to 2C on the relevant date).

at 0:05:55.  Five officers surrounded Freeman as some held him down while others cut off his top or removed his pants. *Id.*  Madrid did not touch Freeman during these events, but he appeared to be in charge because the other officers looked to him for permission to act and he gave them directions. *See, e.g.*, *id.* at 0:05:01, 0:05:20, 0:05:55, 0:07:15.  Freeman continued yelling throughout this process, usually saying "excessive!" *Id.* at 0:06:32-07:15.  It does not appear from the video that he was moving or physically resisting. *Id.*  At one point, several officers told Freeman to stop resisting and turning his head. *Id.* at 0:06:50.  But because an officer is in between Freeman and Madrid, Madrid's BWC video does not show what Freeman was doing, if anything, besides yelling.

After the officers completed the search, they stood Freeman up and backed him toward the room's door. *Id.* at 0:07:32.  Freeman then stated, "You could have told me to do all this." *Id.* at 0:07:37.  Madrid responded, "Well, I tried to, sir." *Id.* at 0:07:41.  The officers took the spit mask off and then removed the handcuffs through the port in the door. *Id.* at 0:08:06.  Freeman complained that the officers were breaking his wrist while they were removing the handcuffs. *Id.* at 0:08:20.  It appears from the video that Freeman tried to move away from the door, thus pulling on the handcuffs, and Madrid told him not to pull away. *Id.* at 0:08:15.  After the handcuffs were removed, Madrid advised Freeman that he was going to have "psych" and medical visit when Freeman calmed down. *Id.* at 0:08:40.  Freeman shouted throughout the entire incident, including after he was unhandcuffed. *Id.*

Even viewing the facts in the light most favorable to Freeman, no reasonable jury could find that Madrid used or ordered excessive force.  Freeman had just been involved in a physical fight with another detainee, had not followed Small's commands, had attempted to pull away from Small, and was not complying with repeated commands to stop yelling.  Although it does

13

not appear from the video that Freeman was actively physically resisting while Madrid was present, he had just physically resisted Small and was verbally resisting Madrid and the other officers. Madrid asked Freeman multiple times whether he would comply with a strip search, and aside from Freeman's stray comment that he was not refusing, he never stated that he would comply when Madrid directly asked him.

Madrid tried to calm Freeman down, asked if he wanted medical help, and gave him an opportunity to voluntarily comply with the strip search, but Freeman was shouting throughout the incident and did not indicate that he would obey officer commands. Given Freeman's highly agitated state and his refusal to state that he would comply with the search when directly asked, it was objectively reasonable for Madrid to order the other officers to secure Freeman in an isolation cell, control his movements, and remove his clothing to search for weapons following a detainee fight. The lack of significant injury to Freeman confirms the amount of force was reasonable under the circumstances. *See* ECF Nos. 20-16 at 2, 4, 7 (Freeman's medical record showing complaints of low back pain, "generalized body pain, superficial abrasions at both wrist[s and] lower lip," "very minimal swelling," Tylenol and wrist x-rays ordered, x-rays unremarkable with no fracture or dislocation); 20-15 (x-ray report noting no fracture or dislocation of Freeman's wrists).

Further, through his default Freeman admitted that Madrid did not use excessive force. ECF No. 20-18 at 7-8. And Freeman has not pointed to clearly established law that would have put Madrid on notice that his actions would violate Freeman's rights, so Madrid is entitled to qualified immunity. *See O'Doan*, 991 F.3d at 1036-37; *Sorrels*, 290 F.3d at 969. I therefore grant Madrid's motion for summary judgment on the excessive force claim related to the transport to the isolation cell, the strip search, and the removal of the handcuffs and spit mask.

### C. Freeman's retaliation claim fails because the admissions and other evidence show Freeman did not exhaust his administrative remedies.

"No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Thus, it is mandatory to exhaust administrative remedies prior to filing a lawsuit. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The Prison Litigation Reform Act (PLRA) requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). That means the inmate "must use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009). The inmate must comply "with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91.

"[F]ailure to exhaust is an affirmative defense under the PLRA." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Consequently, the defendants bear the burden of proving the inmate failed to exhaust an available administrative remedy. *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc). If the defendants do so, the burden shifts to the inmate to show "there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quotation omitted). The defendants bear the "ultimate burden" of proving a failure to exhaust. *Id.*

Through his failure to respond to the RFAs, Freeman admitted that he did not exhaust administrative remedies with respect to his retaliation claim. ECF No. 20-18 at 7-8. Additionally, Freeman's grievances related to this incident assert only excessive force and do not mention retaliation. ECF Nos. 20-12 at 9; 20-20 at 2-3, 5. Freeman's argument that the grievance process was unavailable to him because the defendants quickly deny grievances fails. Freeman never submitted an initial grievance regarding retaliation even though he did file grievances related to the same event claiming excessive force. Further, the evidence shows that Freeman's grievance asserting excessive force for this incident was not immediately denied, as an investigation was conducted. ECF No. 20-12 at 9-10, 19-21. Freeman also asserts that the defendants alter documents. But he does not specifically state that he filed a grievance about alleged retaliation that the defendants altered to make it appear that he had not done so. Because no genuine dispute remains that Freeman did not exhaust his administrative remedies, I grant summary judgment in favor of Small and Madrid on Freeman's First Amendment retaliation claim.[8]

## II. CONCLUSION

I THEREFORE ORDER that the defendants' motion to seal **(ECF No. 23) is GRANTED**. The clerk of court shall seal the video exhibit thumb drives that were manually filed at ECF No. 22 because they depict the plaintiff undergoing a strip search.

/ / / /

/ / / /

/ / / /

---

[8] Additionally, because Freeman's excessive force claims fail, his First Amendment retaliation claims also necessarily fail because he asserts that Small and Madrid used excessive force in retaliation. But because they did not use excessive force, there was no retaliatory act.

I FURTHER ORDER that the defendants' motion for summary judgment **(ECF No. 20)** **is GRANTED**. The clerk of court is instructed to enter judgment in favor of the defendants and to close this case.

DATED this 19th day of December, 2025.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE